UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| DAVID RUSSELL and JOHN ORTON III on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CONSOLIDATED COMMUNICATIONS, LLC, CONSOLIDATED COMMUNICATIONS OF NORTHERN NEW ENGLAND COMPANY, LLC, CONSOLIDATED COMMUNICATIONS OF VERMONT COMPANY, LLC, CS CONTRACT SOLUTIONS, LLC d/b/a CONEXA TECHNOLOGIES, C. ROBERT UDELL, JR., BENJAMIN SUNDERLAND, and KEITH CRISTOBAL, in their personal and professional capacities, <br><br> Defendants. | CIVIL CASE NO. _2:25-cv-572_ <br><br> **COLLECTIVE AND CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs David Russell ("Russell") and John Orton III ("Orton") (Russell and Orton together, "Plaintiffs") on behalf of themselves and others similarly situated, by and through their attorneys, Paul Frank + Collins PC and Crabill PLLC, hereby allege as follows against Defendants Consolidated Communications, LLC ("Consolidated Communications"), Consolidated Communications of Northern New England Company, LLC ("Consolidated New England"), Consolidated Communications of Vermont Company, LLC ("Consolidated Vermont") (Consolidated Communications, Consolidated New England, and Consolidated Vermont together, "Consolidated"), CS Contract Solutions, LLC ("CS") d/b/a Conexa Technologies ("Conexa"), C. Robert Udell, Jr. ("Udell"), Benjamin Sunderland ("Sunderland"), and Keith Cristobal ("Cristobal") (altogether, "Defendants"):

## PRELIMINARY STATEMENT

1.      Technicians are employees who perform installation, maintenance, and repair work that is critical to Consolidated's business of providing telephone and internet services to customers.

2.      Consolidated hires Technicians through companies such as Conexa and coordinates with Conexa to oversee, supervise, and manage Technicians who provide services to Consolidated's customers.

3.      Together, Defendants supervise and control all aspects of their employment of Technicians.

4.      For example, Defendants primarily pay Technicians on a piece-rate basis, meaning Defendants pay Technicians at varying rates depending on the specific tasks they assign Technicians to complete.

5.      For example, Defendants pay Technicians $105 for each "Internet Install" and $100 for each "1 – 500 Drop" job they complete.

6.      However, Defendants pay Technicians by the hour when they assign Technicians to complete repair work for Consolidated's customers.

7.      Although Technicians typically work approximately 65 to 70 hours per week, Defendants fail to pay Technicians overtime compensation for hours worked in excess of 40 hours in a workweek, instead paying them on a piece-rate and hourly basis without accounting for overtime compensation at all.

8.      Plaintiffs bring claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all other similarly situated employees comprising the proposed FLSA Collective (defined *infra*

¶ 150).

9.      Plaintiffs also bring claims under the (i) Vermont Employment Practices Act, 21 V.S.A. §§ 341, *et seq.* ("VEPA"), (ii) Maine wage and hour law, 26 Me. Rev. Stat. Ann. tit. 26, §§ 664, *et seq.* ("Maine Wage Law"), and (iii) New Hampshire's wage and hour law, N.H. Rev. Stat. Ann. 279:1, *et seq.* ("New Hampshire Wage Law") as a class action, pursuant to the Federal Rules of Civil Procedure ("FRCP") 23, on behalf of themselves and all other similarly situated employees who comprise the proposed Class (defined *infra* ¶ 159) at any time during the full statute of limitations period.

## JURISDICTION AND VENUE

10.     Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiffs' rights under the FLSA.

11.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' related claims arising under State law.

12.     Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## PARTIES

### A.      Plaintiff David Russell

13.     Russell is a resident of the State of Florida.

14.     Russell was employed by Conexa from in or around 2020 through on or around April 5, 2024.

15.     Russell was employed by Consolidated from 2020 through in or around February

2023.

16.    At all relevant times, Russell was an "employee" of Defendants within the meaning of all relevant statutes and regulations.

**B.    Plaintiff John Orton III**

17.    Orton is a resident of the State of Texas.

18.    Orton was hired by Conexa on or around April 4, 2023, and is still employed by Conexa.

19.    Orton was employed by Consolidated from April 4, 2023, through in or around February 2023.

20.    At all relevant times, Orton was an "employee" of Defendants within the meaning of all relevant statutes and regulations.

**C.    Consolidated Communications, LLC**

21.    Consolidated Communications is a domestic telecommunications business corporation that regularly provides telephone and internet services to residential and business customers in Vermont, New Hampshire, Maine, and across the country.

22.    Consolidated Communications' principal place of business is located at 2116 S. 17th Street, Mattoon, Illinois 61938.

23.    At all relevant times, Consolidated Communications controlled and directed the terms of employment and compensation of Russell, Orton, and all persons similarly situated.

24.    At all relevant times, Consolidated Communications established, implemented, disseminated, and controlled the employment policies applicable to Russell, Orton, and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, and payroll.

25.    At all relevant times, Consolidated Communications maintained and exercised authority to hire, fire, discipline, and promote Russell, Orton, and all persons similarly situated.

26.    At all relevant times, Consolidated Communications was an "employer" within the meaning of all relevant statutes and regulations.

### D.    Consolidated Communications of Northern New England Company, LLC

27.    Consolidated New England is a domestic telecommunications business corporation that regularly provides telephone and internet services to residential and business customers in New Hampshire and Maine.

28.    Consolidated New England's principal place of business is located at 2116 S. 17th Street, Mattoon, Illinois 61938.

29.    At all relevant times, Consolidated New England controlled and directed the terms of employment and compensation of Russell, Orton, and all persons similarly situated.

30.    At all relevant times, Consolidated New England established, implemented, disseminated, and controlled the employment policies applicable to Russell, Orton, and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, and payroll.

31.    At all relevant times, Consolidated New England maintained and exercised authority to hire, fire, discipline, and promote Russell, Orton, and all persons similarly situated.

32.    At all relevant times, Consolidated New England was an "employer" within the meaning of all relevant statutes and regulations.

### E.    Consolidated Communications of Vermont Company, LLC

33.    Consolidated Vermont is a domestic telecommunications business corporation that regularly provides telephone and internet services to residential and business customers in

Vermont.

34.     Consolidated Vermont's principal place of business is located at 2116 S. 17th Street, Mattoon, Illinois 61938.

35.     At all relevant times, Consolidated Vermont controlled and directed the terms of employment and compensation of Russell, Orton, and all persons similarly situated.

36.     At all relevant times, Consolidated Vermont established, implemented, disseminated, and controlled the employment policies applicable to Russell, Orton, and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, and payroll.

37.     At all relevant times, Consolidated Vermont maintained and exercised authority to hire, fire, discipline, and promote Russell, Orton, and all persons similarly situated.

38.     At all relevant times, Consolidated Vermont was an "employer" within the meaning of all relevant statutes and regulations.

### F.     Defendant C. Robert Udell, Jr.

39.     Udell is CEO of Consolidated and, upon information and belief, a resident of Texas.

40.     At all relevant times, Udell controlled and directed the terms of employment and compensation of Russell, Orton, and all persons similarly situated.

41.     At all relevant times, Udell established, implemented, disseminated, and controlled the employment policies applicable to Russell, Orton, and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, and payroll.

42.     At all relevant times, Udell maintained and exercised authority to hire, fire,

discipline, and promote Russell, Orton, and all persons similarly situated.

43.    At all relevant times, Udell was an "employer" within the meaning of all relevant statutes and regulations.

### G.    Defendant CS Contract Solutions, LLC d/b/a Conexa Technologies

44.    CS is a domestic business corporation that provides telecommunications services including project-based staffing solutions for both outside and inside plant projects in Vermont, New Hampshire, Maine, and across the country.

45.    CS's principal place of business is located at 165 S River Road, Suite C, Bedford, New Hampshire 03110.

46.    Upon information and belief, in or around 2023, CS rebranded and started conducting business under the trade name Conexa Technologies.

47.    At all relevant times, Conexa controlled and directed the terms of employment and compensation of Russell, Orton, and all persons similarly situated.

48.    At all relevant times, Conexa established, implemented, disseminated, and controlled the employment policies applicable to Russell, Orton, and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, and payroll.

49.    At all relevant times, Conexa maintained and exercised authority to hire, fire, discipline, and promote Russell, Orton, and all persons similarly situated.

50.    At all relevant times, Conexa was an "employer" within the meaning of all relevant statutes and regulations.

### H.    Defendant Benjamin Sunderland

51.    Sunderland is an owner of Conexa and a resident of Vermont.

52.     At all relevant times, Sunderland controlled and directed the terms of employment and compensation of Russell, Orton, and all persons similarly situated.

53.     At all relevant times, Sunderland established, implemented, disseminated, and controlled the employment policies applicable to Russell, Orton, and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, and payroll.

54.     At all relevant times, Sunderland maintained and exercised authority to hire, fire, discipline, and promote Russell, Orton, and all persons similarly situated.

55.     At all relevant times, Sunderland was an "employer" within the meaning of all relevant statutes and regulations.

I.      **Defendant Keith Cristobal**

56.     Cristobal is an owner of Conexa and is a resident of New Hampshire.

57.     At all relevant times, Cristobal controlled and directed the terms of employment and compensation of Russell, Orton, and all persons similarly situated.

58.     At all relevant times, Cristobal established, implemented, disseminated, and controlled the employment policies applicable to Russell, Orton, and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, and payroll.

59.     At all relevant times, Cristobal maintained and exercised authority to hire, fire, discipline, and promote Russell, Orton, and all persons similarly situated.

60.     At all relevant times, Cristobal was an "employer" within the meaning of all relevant statutes and regulations.

## FACTS

### A.    Background

61.    Consolidated provides a range of telecommunications and technology services, including high-speed fiber internet, video, voice, and additional network solutions for residential, business, and wholesale customers in Vermont, New Hampshire, Maine, and across the United States.

62.    Consolidated enters into agreements with companies who provide them with Technicians who perform installation, maintenance, and repair work in connection with telephone and internet services provided to their customers.

63.    CS provides Technicians to telecommunications companies, enabling the telecommunications companies to deliver services to their customers.

64.    Upon information and belief, in or around 2020, CS and Consolidated entered into an agreement for CS to provide Technicians to Consolidated to perform services for their customers.

65.    Technicians are employees who perform installation, maintenance, and repair work that is critical to Consolidated's business of providing telephone and internet services to customers.

66.    Also, as mentioned above, in 2022, CS rebranded and began doing business under the trade name Conex Technologies.

67.    Together, Defendants employ dozens of Technicians at any given time who provide telecommunications and technology services to Consolidated's customers.

### B.    Joint Employment and Indicia of Control

68.    Defendants function as a single integrated enterprise that together provide

telecommunications and technology services to Consolidated's customers throughout Vermont, New Hampshire, Maine, and across the country.

69.     Defendants supervise and control all aspects of the employment of workers who perform installations, maintenance, repairs, and other work in connection with telephone and internet services provided to residential, commercial, and wholesale customers of Consolidated.

70.     By way of example only, after Consolidated hires a Technician through Conexa, Defendants determine the geographic region(s) that the Technician will provide services to Consolidated's customers.

71.     Also, Defendants require Technicians to follow certain policies and procedures related to their job duties which include, *inter alia*, running cables, setting up equipment such as modems, routers, optical network terminals, and fiberoptic drops, splicing fiberoptic cables, and ensuring that all connections are properly configured.

72.     Defendants set the work schedules for all Technicians, including the start and end time of each shift, as well as a myriad of other conditions of employment.

73.     Defendants schedule Technicians to perform services for Consolidated customers at least five days per week.

74.     Also, Defendants have established a weekly pay period spanning from Sunday to Saturday for Technicians.

75.     During regular virtual meetings each Friday called "tailgate meetings," Defendants provide Technicians with their work schedules for the following week.

76.     Consolidated provides Technicians with online accounts through its internal software systems and other digital tools that support workforce management, job tracking, and training.

77.    To provide Technicians with access to their online accounts, Consolidated assigns Technicians login credentials to access Consolidated's virtual private networks or VPNs.

78.    Through the online accounts, Defendants provide Technicians with their daily job assignments based on their location, skillset, and availability.

79.    Also, Defendants provide specific information to Technicians about their daily job assignments through their online accounts, including customer addresses, the services the Technicians will perform customers, and equipment they will need to complete their work.

80.    Each workday, Defendants require Technicians to log into their online accounts before 8:00 a.m. to learn which Consolidated customers they were assigned to perform services for by Defendants.

81.    After Technicians retrieve information about their daily assignments, Defendants mandate that Technicians begin commuting to their first assigned jobsite by 8:00 a.m.

82.    If a Technician fails to begin his commute to his first assigned jobsite by 8:00 a.m., then an employee from Conexa or Consolidated's dispatch group attempts to contact the Technician to learn why he failed to start his commute on time.

83.    Defendants can and do reprimand and fire Technicians who do not timely begin their commutes to their first assigned jobsites.

84.    Additionally, through the online accounts they provide to Technicians, Defendants can track the status of Technicians' work assignments.

85.    Defendants can track when a Technician has started and when he has completed a work assignment.

86.    Specifically, Defendants require Technicians to mark in their online accounts when they have started working on a job assignment.

87.     A Technician begins working on a job assignment when he starts his commute to a jobsite to perform services for customer of Consolidated.

88.     After a Technician completes a work assignment, Defendants instruct the Technician to log into his online account and mark the job as "closed."

89.     Also, after a Technician completes a job, Defendants require the Technician to write notes in his online account about any complications or issues that may have arisen during the work he performed for a customer of Consolidated.

90.     Alternatively, if a Technician arrives at a jobsite and the customer associated with that jobsite is unable to accept service at that time, then Defendants require the Technician hang a notice on the customer's doorknob so the customer can reschedule the services the Technician was assigned to complete by Defendants.

91.     After a Technician completes work for a customer or if a customer is not able to accept service at the time the Technician arrives at a jobsite, then Defendants direct the Technician to proceed to his next assigned jobsite.

92.     If a Technician has completed all of his daily assignments before around 5:00 p.m., Defendants require the Technician to call into Consolidated's dispatch group and notify them that he has completed all of jobs Defendants assigned to him that day.

93.     Next, Consolidated's dispatch team may assign the Technician to additional jobs depending on the amount of remaining unassigned or outstanding jobs that workday.

94.     Also, after completing all of the jobs Defendants assigned to them, Defendants direct Technicians to refresh their online accounts to see if Defendants assigned them to additional jobs to be completed that workday.

95.     Further, Defendants mandate that Technicians watch mandatory training videos

through their online accounts provided by Consolidated related to any new products or services

Consolidated offers to customers.

96.     Defendants also share resources, align their business strategies, and have

intertwined management structures related to the supervision of work performed by Technicians.

97.     For example, Conexa maintains training facilities in Battleboro, Vermont at which

Defendants train Technicians on how to perform various tasks related to telephone and internet

services provided to residential and commercial customers of Consolidated.

98.     Defendants require newly hired Technicians to attend mandatory trainings at

Conexa's Battleboro location during their first week of employment.

99.     Additionally, Defendants require to Technicians to pick up equipment such as

modems, routers, optical network terminals, and fiberoptic drops at Conexa's warehouse at 76

Technology Drive, Battleboro, Vermont 05301 which Conexa rents to Consolidated so

Consolidated can store their equipment.

100.    In addition to the 76 Technology Drive location, Defendants maintain other

warehouses and central offices in New Hampshire and Maine which store equipment

Technicians are required to retrieve and use to perform services for Consolidated's customers.

101.    Depending on where they assign Technicians to work, Defendants require

Technicians to visit one of Consolidated's warehouses or central offices throughout Vermont,

New Hampshire, and Maine.

102.    Defendants maintain employment records for their employees, including

timesheets, payroll reports, and wage statements.

103.    Indeed, Defendants require Technicians to submit timesheets to their supervisors

at Conexa.

104.    After a Conexa supervisor signs off on the submitted timesheet, the timesheet is transferred to Conexa's payroll department for a supplemental review.

105.    Upon information and belief, if the payroll department approves the timesheet, then the timesheet is sent to Consolidated for a final approval.

106.    After a timesheet is finally approved by Consolidated, Conexa provides the Technician associated with the timesheet with a document called a Payroll Report which contains information about the amount of compensation to be paid to the Technician in connection with a specific pay period.

107.    Additionally, upon information and belief, Conexa has access to Consolidated's software and the ability to program the software so that jobs for Consolidated's customers are assigned to Technicians based on the Technicians' location(s) and work experience.

108.    Further, Consolidated sends quality control employees to various jobsites to perform unannounced inspections and assessments of Technicians' work and performance.

109.    Consolidated's quality control employees create a record of their assessments of Technicians' work and provide those assessments to Conexa, Sunderland, and Cristobal.

110.    After reviewing the assessments related to Technicians' performance, Defendants coordinate and determine if remedial action should be taken against any Technicians, including suspension and termination of employment.

### C.    Defendants Fail to Pay Technicians Their Earned Overtime Pay

111.    Defendants primarily pay Technicians on a piece-rate basis, meaning Defendants pay Technicians at varying rates depending on the specific tasks the assign Technicians to complete.

112.    For example, Defendants pay Technicians $105 for each "Internet Install" and

$100 for each "1 – 500 Drop" job they complete.

113.    However, Defendants pay Technicians by the hour when they assign Technicians to complete repair work for Consolidated's customers.

114.    Although Technicians typically work 65 to 70 hours per workweek, Defendants fail to pay Technicians overtime compensation for hours worked in excess of 40 hours in a workweek, instead paying them on a piece-rate and hourly basis without accounting for overtime compensation at all.

### D.    Plaintiff David Russell

115.    Conexa hired Russell as a Technician in or around 2020.

116.    Around that time, through Conexa, Consolidated hired Russell to work as a Technician and provide services to its customers in Vermont, New Hampshire, and Maine.

117.    As a Technician for Consolidated, Russell performed installation, maintenance, and repair work related to cable, telephone, and internet services Consolidated provides to customers.

118.    Russell's job duties working for Defendants included, *inter alia*, running cables, setting up equipment such as modems, routers, optical network terminals, fiberoptic drops, and set-top boxes, and ensuring that all connections are properly configured.

119.    To complete jobs for customers, Defendants required Russell to travel to their warehouses and central offices in Vermont, New Hampshire, and/or Maine at the beginning of each workweek so that Consolidated could provide him with the above-referenced equipment.

120.    In connection with the work that Russell performed for Consolidated's customers, Defendants paid Russell on a piece-rate and hourly basis.

121.    For example, in connection with work Russell performed for customers on

January 10, 2023, Defendants paid Russell at a rate of $105 for each job he completed described as "Internet Install" and at a rate of $100 for each job he completed described as "1' – 500' Drop." *See* Ex. A at 2.

122.   Also, Defendants paid Russell by the hour when they assigned him to complete repair work for Consolidated's customers.

123.   On average, Russell worked approximately 65 hours per workweek.

124.   However, Defendants never paid Russell overtime compensation for any hours worked in excess of 40 hours in a workweek.

125.   Instead, Defendants paid Russell on a piece-rate and hourly basis without accounting for overtime compensation at all.

126.   For example, for the workweek ending on January 14, 2023, Russell worked approximately 59.75 hours.

127.   For the pay period related to the workweek ending on January 14, 2023, Defendants paid Russell $3,753.50 in wages based on a piece-rate pay structure.  *See* Ex. A.

128.   As a result, Russell's regular hourly rate of pay for that workweek was $62.82 ($3,753.50 piece-rate pay ÷ 59.75 hours).

129.   As such, Russell's overtime hourly rate for that workweek was $94.23 ($62.82 x 1.5).

130.   Since he worked approximately 19.75 overtime hours that workweek, Russell earned overtime pay equal to $1,862.43 (19.75 overtime hours x $94.23 per hour).

131.   However, Defendants did not account for overtime compensation in connection with the wages paid to Russell related to workweek ending on January 14, 2023.

132.   Instead, Defendants paid Russell at his flat rate for all hours worked during that

workweek.

### E.    Plaintiff John Orton

133.    On or around April 4, 2023, Conexa hired Orton as a Technician.

134.    Around that time, through Conexa, Consolidated hired Orton to work as a Technician and provide services to its customers in Vermont, New Hampshire, and Maine.

135.    As a Technician for Consolidated, Orton performed installation, maintenance, and repair work related to cable, telephone, and internet services Consolidated provides to customers.

136.    Orton's job duties working for Defendants included, *inter alia*, running cables, setting up equipment such as modems, routers, optical network terminals, fiberoptic drops, and set-top boxes, and ensuring that all connections are properly configured.

137.    To complete jobs for customers, Defendants required Orton to travel to their warehouses and central offices in Vermont, New Hampshire, and/or Maine at the beginning of each workweek so that Consolidated could provide him with the above-referenced equipment.

138.    In connection with the work that Orton performed for Consolidated's customers, Defendants paid Orton on a piece-rate and hourly basis.

139.    For example, in connection with work Orton performed for customers on May 20, 2023, Defendants paid Orton at a rate of $105 for each job he completed described as "Install Broadband" and at a rate of $200 for each job he completed described as "1,001' – 1,500' Drop." *See* Ex. B at 6.

140.    Also, Defendants paid Orton by the hour when they assigned him to complete repair work for Consolidated's customers.

141.    On average, Orton worked approximately 70 hours per workweek.

142.    However, Defendants never paid Orton overtime compensation for any hours

worked in excess of 40 hours in a workweek.

143.    Instead, Defendants paid Orton on a piece-rate and hourly basis without accounting for overtime compensation at all.

144.    For example, for the workweek ending on May 20, 2023, Orton worked approximately 74.25 hours.  *See id.*

145.    For the pay period related to the workweek ending on May 20, 2023, Defendants paid Orton $6,920.00 in wages based on a piece-rate pay structure.  *See id.*

146.    As a result, Orton's regular hourly rate of pay for that workweek was $93.20 ($6,920.00 piece-rate pay ÷ 74.25 hours).

147.    As such, Russell's overtime hourly rate for that workweek was $139.80 ($93.20 x 1.5).

148.    Since he worked approximately 34.25 overtime hours that workweek, Orton earned overtime pay equal to $4,823.10 (34.25 overtime hours x $139.80 per hour).

149.    However, Defendants did not account for overtime compensation in connection with the wages paid to Orton related to workweek ending on May 20, 2023.

150.    Instead, Defendants paid Orton at his flat rate for all hours worked during that workweek.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

151.    Plaintiffs bring their FLSA claims as a collective action on behalf of themselves and all other similarly situated persons who have been employed by Defendants as Technicians at any time during the full statute of limitations period (the "FLSA Collective").

152.    At all relevant times, Plaintiffs and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same

common policies, and were subject to Defendants' policy and practice of failing to pay overtime wages at a rate of one and one-half times their regular rates of pay for all hours worked in excess of 40 hours in a workweek.

153.    At all relevant times, Defendants have been fully aware of the duties performed by Plaintiffs and the FLSA Collective and that Plaintiff and the FLSA Collective are not exempt from the protections of the FLSA.

154.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiffs and the FLSA Collective.

155.    As a result of their unlawful conduct, Defendants are liable to Plaintiffs and the FLSA Collective for the full amount of their unpaid wages, with interest, an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs incurred by Plaintiffs and the FLSA Collective.

156.    While the exact number is unknown to Plaintiffs at this time, upon information and belief, there are approximately 500 members of the FLSA Collective.

157.    Plaintiffs are currently unaware of the identities of the individual members of the FLSA Collective.

158.    Accordingly, the Court should require Defendants to provide Plaintiffs with a list of all members of the proposed FLSA Collective, along with their last known home addresses, telephone numbers, and email addresses, so that Plaintiffs may provide the members of the FLSA Collective with notice of this action and an opportunity to make an informed decision regarding whether to participate in the same.

## CLASS ACTION ALLEGATIONS

159.     Plaintiffs bring this action, in part, as a class action under the VEPA, Maine Wage Law, and New Hampshire Wage Law, as well as all applicable regulations thereunder.

### A.     Class Definition

160.     Plaintiffs seeks to maintain claims, pursuant to FRCP 23, on behalf of themselves and all other similarly situated persons who have been employed by Defendants at any time during the full statute of limitations period (the "Class").

161.     Plaintiffs allege, on behalf of themselves and the Class, that Defendants violated the VEPA, Maine Wage Law, and New Hampshire Wage Law by, *inter alia*: failing to pay overtime wages at a rate of one and one-half times their regular rates of pay for all hours worked in excess of 40 hours in a workweek.

162.     Plaintiffs and the Class have standing to seek such relief because of the adverse effects that Defendants' wage practices have had on them individually and as a group.

163.     The wage practices described herein are part of Defendants' normal course of conduct.

164.     Pursuant to FRCP 23, Plaintiff's VEPA, Maine Wage Law, and New Hampshire Wage Law claims may be pursued by all similarly situated persons who do not opt out of the Class.

### B.     Numerosity and Impracticability of Joinder

165.     The members of the Class are so numerous that joinder is impracticable.

166.     While the exact number is unknown to Plaintiff sat this time, upon information and belief, there are approximately 500 members of the Class.

167.     Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

C.    **Common Questions of Law and Fact**

168.    Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the Class and predominate over any questions only affecting the members of the Class individually.

169.    Indeed, there are few, if any, purely individual issues in this action.

170.    The questions of law and fact common to Plaintiffs and the Class include, without limitation:

(a)    Whether Defendants failed to pay Plaintiffs and the Class all overtime wages owed and

(b)    Whether Plaintiff and the Class are entitled to liquidated damages and injunctive relief.

171.    Therefore, the commonality requirement of FRCP 23(a) is satisfied.

D.    **Typicality of Claims and Relief Sought**

172.    Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent.

173.    Plaintiffs and the Class work, or have worked, for Defendants and are, or were, subject to the same compensation policies and practices.

174.    The wage practices suffered by Plaintiffs, and the damages resulting therefrom, are typical of Defendants' treatment of the Class.

175.    Therefore, the typicality requirement of FRCP 23(a) is satisfied.

E.    **Adequacy of Representation**

176.    Plaintiffs will fairly and adequately protect the interests of the Class because their interests are coextensive and aligned with those of the Class.

177.    Plaintiffs have no interests adverse to the Class they seek to represent.

178.    Plaintiffs are willing and able to represent the Class as fairly and vigorously as

they pursue their similar individual claims.

179.   Plaintiffs have retained competent counsel who are qualified and experienced in employment class action litigation and able to meet the demands necessary to litigate a class action of this size and complexity.

180.   The combined interests, experience, and resources of Plaintiffs and their counsel to competently litigate the individual and Class claims at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a).

### F.     Requirements of FRCP 23(b)(1)

181.   Without certification of the Class, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

182.   Accordingly, certification of the Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs and the Class.

183.   By filing this Complaint, Plaintiffs preserve the rights of the members of the Class with respect to the statute of limitations on their claims.

184.   Therefore, not certifying the Class would substantially impair and/or impede the ability of the members thereof to protect their interests.

### G.     Requirements of FRCP 23(b)(2)

185.   Defendants have acted on grounds, described herein, generally applicable to Plaintiffs and the Class by denying Plaintiffs and the Class overtime wages.

186.   These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiffs and the Class as a whole.

187.    Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of, the wages detailed herein and timely payment of the same.

188.    Declaratory and injunctive relief are the factual and legal predicates for Plaintiffs' and the Class's entitlement to monetary and non-monetary remedies for Defendants' wage violations.

189.    Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

**H.    Requirements of FRCP 23(b)(3)**

190.    The common issues of fact and law affecting Plaintiffs and the Class—including, without limitation, the common issues identified above—predominate over issues affecting only individual claims.

191.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' and the Class's claims.

192.    The cost of proving Defendants' pattern and practice of denying wages makes it impractical for the members of the Class to pursue their claims individually.

193.    This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of the members of the Class (*e.g.*, they must have worked for Defendants during the statutory period), as well as the common questions of law and fact described herein.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: FAILURE TO PAY OVERTIME**
*(On Behalf of Plaintiffs and the FLSA Collective)*

194.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeats and

realleges the foregoing allegations as if set forth fully herein.

195.     During the full statutory period, Plaintiffs and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C. §§ 201, *et seq.*, and applicable regulations thereunder.

196.     The FLSA requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

197.     Plaintiffs and the FLSA Collective were not exempt from the requirement that their employers pay them overtime wages under the FLSA, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

198.     During the statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff sand the FLSA Collective at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

199.     As a result of Defendants' failures to compensate Plaintiffs and the FLSA Collective at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

200.     Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

201.     Defendants' violations of the FLSA have significantly damaged Plaintiffs and the

FLSA Collective and entitle them to recover the total amount of their unpaid wages, an

additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and

costs.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE VEPA: FAILURE TO PAY OVERTIME**
*(On Behalf of Plaintiffs and the Class)*

202.    Plaintiffs, on behalf of themselves and the Class, hereby repeats and realleges the

foregoing allegations as if set forth fully herein.

203.    During the full statutory period, Plaintiffs and the Class were protected by the

provisions of VEPA, 21 V.S.A. §§ 341, *et seq.*, and applicable regulations thereunder.

204.    VEPA requires covered employers, including Defendants, to compensate

employees at a rate not less than one and one-half times their regular rate of pay for all hours

worked in excess of 40 hours in a workweek.

205.    Plaintiffs and the Class were not exempt from the requirement that their

employers pay them overtime wages under VEPA, and they are entitled to be paid overtime by

Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of

limitations period.

206.    During the statute of limitations period, Defendants have engaged in a policy and

practice of failing to compensate Plaintiff sand the Class at a rate not less than one and one-half

times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

207.    As a result of Defendants' failures to compensate Plaintiffs and the Class at a rate

not less than one and one-half times their regular rate of pay for all hours worked in excess of 40

hours in a workweek, Defendants have violated VEPA and/or applicable regulations thereunder.

208.    Defendants have acted willfully and deliberately in maintaining an intentional

practice of failing to compensate Plaintiffs and the Class in accordance with VEPA.

209.    Defendants' violations of VEPA have significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF THE MAINE WAGE LAW: FAILURE TO PAY OVERTIME**
*(On Behalf of Plaintiffs and the Class)*

210.    Plaintiffs, on behalf of themselves and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

211.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the Maine Wage Law, 26 Me. Rev. Stat. Ann. tit. 26, §§ 664, *et seq.*, and applicable regulations thereunder.

212.    The Maine Wage Law requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

213.    Plaintiffs and the Class were not exempt from the requirement that their employers pay them overtime wages under the Maine Wage Law, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

214.    During the statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff sand the Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

215.    As a result of Defendants' failures to compensate Plaintiffs and the Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40

hours in a workweek, Defendants have violated the Maine Wage Law and/or applicable regulations thereunder.

216.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the Maine Wage Law.

217.    Defendants' violations of the Maine Wage Law have significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE NEW HAMPSHIRE WAGE LAW:**
**FAILURE TO PAY OVERTIME**
*(On Behalf of Plaintiffs and the Class)*

218.    Plaintiffs, on behalf of themselves and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

219.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the New Hampshire Wage Law, N.H. Rev. Stat. Ann. 279:1, *et seq.*, and applicable regulations thereunder.

220.    The New Hampshire Wage Law requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

221.    Plaintiffs and the Class were not exempt from the requirement that their employers pay them overtime wages under the New Hampshire Wage Law, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

222.    During the statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff sand the Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

223.    As a result of Defendants' failures to compensate Plaintiffs and the Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the New Hampshire Wage Law and/or applicable regulations thereunder.

224.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the New Hampshire Wage Law.

225.    Defendants' violations of the New Hampshire Wage Law have significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Class, respectfully requests that this Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal law and State laws;

B.    Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    Grant Plaintiffs an award of damages, in an amount to be determined after a trial, for any and all other monetary and/or non-monetary losses they have suffered;

D.      Grant Plaintiffs an award of prejudgment interest on the damages they are awarded to the greatest extent permitted by law;

E.      Grant Plaintiffs an award of reasonable attorneys' fees to the greatest extent permitted by law;

F.      Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide Plaintiffs with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and e-mail addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

G.      Equitably toll the statute of limitations for all members of the FLSA Collective from the date of this filing until they are provided notice of this instant action and opportunity to join the same;

H.      Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiffs with a list of all members of the Class, including all last known addresses, telephone numbers, and email addresses of each such persons, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

I.      Designate Plaintiffs as the representatives of the Class, and their counsel of record as class counsel;

J.      Determine the damages sustained by Plaintiff and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiffs and the FLSA Collective plus such pre-judgment and post-judgment interest as may be allowed by law;

K.      Determine the damages sustained by Plaintiffs and the Class as a result of Defendants' violations of VEPA, the Maine Wage Law, and the New Hampshire Wage Law, and award those damages against Defendants and in favor of Plaintiffs and the Class plus such pre-judgment and post-judgment interest as may be allowed by law;

L.      Award Plaintiffs and the FLSA Collective an additional equal amount as liquidated damages because Defendants' violations were without a good faith basis;

M.      Award Plaintiffs, the FLSA Collective, and the Class their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

N.      Grant Plaintiffs, the FLSA Collective, and the Class such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves, the FLSA Collective, and the Class, hereby demands a trial by jury on all issues of fact and damages.

Dated: June 10, 2025          PAUL FRANK + COLLINS P.C.
      Burlington, Vermont

By:___*/s/ Stephen D. Ellis*_____
      Stephen D. Ellis, Esq.
      P.O. Box 1307 / One Church Street
      Burlington, VT  05402-1307
      T:  (802) 658-2311
      E:  sellis@pfclaw.com

      *Attorney for Plaintiffs and the proposed*
      *FLSA Collective and Class*

Dated: June 10, 2025                    **CRABILL PLLC**
      Queens, New York

By:    */s/ Taylor J. Crabill*
          Taylor J. Crabill, Esq.
          71-01 Austin Street
          Forest Hills, New York 11375
          Tel: (727) 335-1030
          tcrabill@crabilllawfirm.com

          *Attorney for Plaintiffs and the proposed*
          *FLSA Collective and Class*
          (*pro hac vice* application forthcoming)

10452825_1:16012-00001